IN THE

# United States Court of Appeals
## FOR THE ELEVENTH CIRCUIT

————

Moms for Liberty – Brevard County, FL, *et al.*,

*Plaintiffs-Appellants,*

v.

Brevard Public Schools, *et al.*,

*Defendants-Appellees.*

————

Appeal from a judgment of the United States District Court
for the Middle District of Florida, The Hon. Roy B. Dalton, Jr.
(Dist. Ct. No. 6:21-cv-01849-RBD-DAB)

————

## BRIEF OF AMICUS CURIAE
## THOMAS MORE SOCIETY SUPPORTING
## PLAINTIFFS-APPELLANTS

————

Thomas Brejcha†
B. Tyler Brooks
Thomas More Society
309 W. Washington St.
Suite 1250
Chicago, IL 60606
Telephone: (336) 707-8855
Fax: (336) 900-6535
tbrejcha@thomasmoresociety.org
tbrooks@thomasmoresociety.org

† *pro hac vice* application forthcoming.

*Counsel for Amicus Curiae*
*Thomas More Society*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Thomas More Society certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1:

1. Astor, Martha – Counsel for Appellants

2. Baker, Hon. David A. – United States Magistrate Judge

3. Brejcha, Thomas – Counsel for *Amicus Curiae* Thomas More Society (pro hac vice motion forthcoming)

4. Brevard County Public Schools Office of Legal Services – Counsel for Appellees

5. Brevard Public Schools – Appellee

6. Bridges, Gennifer – Counsel for Appellees

7. Brooks, B. Tyler – Counsel for *Amicus Curiae* Thomas More Society

8. Burr & Forman LLP – Law firm representing Appellees

9. Campbell, Katye – Appellee

10. Cholewa, Joseph – Appellant

11. Dalton, Jr., Hon. Roy B. – United States District Judge

12. Delaney, Katie – Appellant

13. Gibbs, Paul – General Counsel for Brevard County School Board

14. Goldstein Law Partners, LLC – Law firm representing Appellants

15. Gura, Alan – Counsel for Appellants

16. Haggard-Belford, Misty – Appellee

17. Hall, Ashley – Appellant

18. Institute for Free Speech – Organization representing Appellants

19. Jenkins, Jennifer – Appellee

20. Kelly, Hon. Gregory J. – United States Magistrate Judge

21. Kneessy, Amy – Appellant

22. Londono, Valerie – Assistant General Counsel for Brevard County School Board

23. Marks, Howard – Counsel for Appellee

24. McDougall, Cheryl – Appellee

25. Moms for Liberty – Brevard County, FL – Appellant

26. Moms for Liberty, Inc. – National affiliate of Appellant

27. Morrison, Ryan – Counsel for Appellants

28. Nolan, Brett R. – Counsel for Appellants

29. Osborne, David – Counsel for Appellants

30. Susin, Matt – Appellee

31. Thakrar, Sheena – Counsel for Appellees

32. Thomas More Society – *Amicus Curiae* in Support of Plaintiffs-

    Appellants

33. Trent, Gene – Appellee

34. Wright, Megan – Appellee

No publicly held or traded company or corporation has an interest in the outcome of this case or appeal.

*Amicus* Thomas More Society is a nonprofit corporation. It does not have any parent companies, subsidiaries, or affiliates, nor does it issue shares to the public.

/s/ B. Tyler Brooks
B. Tyler Brooks
Counsel for *Amicus Curiae*
Thomas More Society

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT .............................. C-1

TABLE OF AUTHORITIES ...................................................................iii

INTEREST OF THE *AMICUS CURIAE* ...................................................1

STATEMENT OF THE ISSUES..............................................................1

SUMMARY OF THE ARGUMENT .........................................................2

ARGUMENT ........................................................................................4

   I.  THE COURT SHOULD NOT PERMIT VAGUE AND
      STANDARDLESS INVOCATIONS OF "SAFETY" TO
      JUSTIFY SUPPRESSION OF POINTS OF VIEW
      DISFAVORED BY A GOVERNMENTAL BODY. ...........................4

      A. The School Board Here Engaged in Censorship Using
         Unsubstantiated "Safety" Concerns. ...........................................4

      B. The School Board Repeatedly Used the Pretext of
         "Safety" to Engage in an Impermissible Heckler's Veto of
         the Plaintiffs and Restrict Free Speech at Its Meetings.............5

      C. The First Amendment Protects Controversial Speech,
         Even in a Limited Public Forum....................................................9

   II.  THE SCHOOL BOARD'S ACTIONS IMPEDED THE
      PUBLIC'S RIGHT TO RECEIVE INFORMATION VITAL
      TO A SYSTEM OF SELF-GOVERNANCE IN VIOLATION
      OF THE FIRST AMENDMENT. .................................................14

CONCLUSION ....................................................................................19

CERTIFICATE OF COMPLIANCE WITH TYPE
VOLUME LIMIT, TYPEFACE REQUIREMENTS,
TYPE-STYLE REQUIREMENTS............................................................21

CERTIFICATE OF SERVICE....................................................................22

# TABLE OF AUTHORITIES

## **Cases**

*Abrams v. United States,*
    250 U.S. 616 (1919) ........................................................... 6-7

*Ariz. Free Enterprise Club's Freedom Club PAC v. Bennett,*
    564 U.S. 721 (2011) ............................................................. 16

*Bible Believers v. Wayne County,*
    805 F.3d 228 (6th Cir. 2015) (en banc) ........................... 8, 9

*Bloedorn v. Grube,*
    631 F.3d 1218 (11th Cir. 2011) ........................................... 9

*Brandenburg v. Ohio,*
    395 U.S. 444 (1969) .............................................................. 9

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ............................................................... 16

*Cambridge Christian School, Inc. v. Florida High School Athletic Association,*
    942 F.3d 1215 (11th Cir. 2019) ......................................... 11

*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez,*
    561 U.S. 661 (2010) .............................................................. 9

*Citizens United v. FEC,*
    558 U.S. 310 (2009) ....................................................... 14, 6

*Connick v. Myers,*
    461 U.S. 138 (1983) ...................................................... 14-15

*Cowley v. Pulsifer,*
    137 Mass. 392 (1884) ......................................................... 18

*Cox v. Louisiana*,
379 U.S. 536 (1965) ........................................................ 8

*Crowder v. Housing Authority of Atlanta*,
990 F.2d 586 (11th Cir. 1993) ................................... 10-11

*Gerber v. Herskovitz*,
14 F.4th 500 (6th Cir. 2021) ......................................... 13

*Iancu v. Brunetti*,
139 S. Ct. 2294 (2019) .................................................. 10

*Ison v. Madison Local Sch. Dist. Bd. of Educ.*,
3 F.4th 887 (6th Cir. 2021) ........................................... 10

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018) .................................................... 6

*Keister v. Bell*,
879 F.3d 1282 (11th Cir. 2018) ...................................... 9

*Lamont v. Postmaster General*,
381 U.S. 301 (1965) ...................................................... 15

*Mahanoy Area School District v. B.L.*
141 S. Ct. 2038 (2021) ................................................. 7, 8

*Marshall v. Amuso*,
571 F. Supp. 3d 412 (E.D. Pa. 2021) ............................ 10

*Martin v. Struthers*,
319 U.S. 141 (1943) ...................................................... 15

*Martin v. U.S. EPA*,
271 F. Supp. 2d 38 (D.D.C. 2002) ................................ 15

*Matal v. Tam*,
582 U.S. 218 (2017) (plurality opinion) ......................... 10

iv

*McIntyre v. Ohio Elections Comm'n,*
514 U.S. 334 (1995) ................................................................. 12

*McMahon v. City of Panama City Beach,*
180 F. Supp. 3d 1076. (N.D. Fla. 2016) ............................... 7

*Meriwether v. Hartop,*
992 F.3d 492 (6th Cir. 2021) ............................................... 6

*Mills v. Alabama,*
384 U.S. 214 (1966) .............................................................. 15

*Minnesota Voters Alliance v. Mansky,*
138 S. Ct. 1876 ..................................................................... 11

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964) ........................................................ 16, 7

*Packingham v. North Carolina,*
127 S. Ct. 1730 (2017) .......................................................... 15

*Publicker Indus., Inc. v. Cohen,*
733 F.2d 1059 (3d Cir. 1984) .............................................. 18

*Red Lion Broadcasting Co. v. FCC,*
395 U.S. 367, (1969) .............................................................. 6

*Roth v. United States,*
354 U.S. 476 (1957) ......................................................... 12-13

*Schacht v. United States,*
398 U.S. 58 (1970) ................................................................ 16

*Smith v. City of Cumming,*
212 F.3d 1332 (11th Cir. 2000) ........................................... 18

*Snyder v. Phelps,*
562 U.S. 443 (2011) .............................................................. 13

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................. 6

*Stanley v. Georgia*,
    394 U.S. 557 (1969) ............................................................. 15

*Terminiello v. Chicago*,
    337 U.S. 1 (1949) ................................................................ 13

*Texas v. Johnson*,
    491 U.S. 397 (1989) ............................................................. 13

*Troxel v. Granville*,
    530 U.S. 57 (2000) ............................................................ 18-19

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*,
    425 U.S. 748 (1976) ............................................................. 15

*Watson v. Memphis*,
    373 U.S. 526 (1963) ............................................................. 8

*Whitney v. California*,
    274 U.S. 357 (1927) ............................................................. 6

## Constitution and Statutes

U.S. Const. amend. I ................................................................. 6

Fla. Stat. § 286.0114(2) ............................................................ 19

## Other Authorities

Daniel Patrick Moynihan *et al.*, *Report of the Commission on Protecting and Reducing Government Secrecy*, (1997) ............................................ 18

John Milton, *Areopagitica* (Yale 1959) ......................................... 7

John Stuart Mill, *On Liberty* (Oxford: Blackwell 1947) ..................... 7

# INTEREST OF THE *AMICUS CURIAE*[1]

*Amicus Curiae* Thomas More Society is a non-profit, national public-interest law firm dedicated to restoring respect in law for life, family, and religious liberty. The Thomas More Society provides legal services to clients free of charge and often represents individuals who cannot afford a legal defense with their own resources. Throughout its history, the Thomas More Society has advocated for the protection of First Amendment rights, including the First Amendment rights of parents with children enrolled in public schools. Leave to file this brief is being sought by means of a contemporaneously filed motion.

## STATEMENT OF THE ISSUES

1. Whether speakers have standing to challenge speech restrictions when they self-censor, by modifying their speech or refraining from speaking altogether, for fear of enforcement;

2. Whether civil rights plaintiffs have standing to seek nominal damages for past violations of their rights;

---

[1] The Plaintiffs-Appellants consent to the filing of this brief; the Defendants-Appellees object and have stated they oppose the filing of this brief. *Amicus* certifies that no counsel for a party authored this brief in whole or in part and no person or entity, other than the *Amicus*, or its counsel, has made a monetary contribution to its preparation or submission.

3. Whether regulations banning "abusive" and "personally directed" speech at school board meetings, on their face and as-applied by Defendants; and Defendants' prohibition of allegedly "unclean" speech as "obscenity," constitute viewpoint discrimination in violation of the First Amendment rights of free speech and petition; and

4. Whether regulations banning "abusive" and "personally directed" speech at school board meetings are unconstitutionally vague and overbroad.

## SUMMARY OF THE ARGUMENT

One of the concerns cited by the defendant School Board in this case for restricting the speech of parents and others at its public meetings was the issue of "safety." Yet, the record in this case shows "safety" being used as little more than a vague and standardless term to rationalize curtailing the political engagement of individuals holding views opposed by those in government. Unsubstantiated invocations of "safety" are invidious to the First Amendment because they offer a pretext for silencing the government's critics while operating as a

heckler's veto that permits the negative reactions of others to justify censorship of a peaceful advocate.

The vitality of these time-tested pillars of First Amendment law are not diminished simply by transferring the context to a limited public forum. To the contrary, the purpose of a school board meeting should be to encourage vigorous debate and exchange of ideas between an elected government and the people. The policy of censorship imposed by the School Board in this case works counter to these natural ends and fails the tests for constitutionally permissible restrictions in a limited public forum. Moreover, the pattern of censorship at issue has restricted the right of the public to receive information, which likewise harms civic health.

For the sake of the Plaintiffs' First Amendment rights, as well as for the sake of encouraging the free flow of information from and about government, summary judgment for the Defendants should be vacated and reversed.

# ARGUMENT

## I. THE COURT SHOULD NOT PERMIT VAGUE AND STANDARDLESS INVOCATIONS OF "SAFETY" TO JUSTIFY SUPPRESSION OF POINTS OF VIEW DISFAVORED BY A GOVERNMENTAL BODY.

### A. The School Board Here Engaged in Censorship Using Unsubstantiated "Safety" Concerns.

The record demonstrates that the Defendants Brevard Public Schools *et al.* (hereinafter, "School Board" or "Board") curtailed parental participation in School Board meetings over the course of at least two years. In the Court below, the School Board justified various aspects of its policy on the grounds of "safety." *See, e.g.,* Doc. 91-1 at 34:13-15. The Board even claims that "safety" was the reason for its policy prohibiting (some) speakers from identifying, in any way, individual Board members during their remarks. Doc. 91-1 at 22:9-24. The Board also expressly justified at least one instance of silencing a parent who was speaking on the grounds of "safety." *See* Doc. 91-1 at 24:2-27:20.

The School Board appears to have no objective standard for when a "safety" concern becomes sufficient to warrant censorship of a citizen speaking at a public meeting. Rather, in her testimony, the former School Board chair incorporated the term "safety" into part of her

standard for "maintaining decorum," stating in a somewhat circular manner that "maintaining decorum" means preventing speech that would "inflame the audience and create an unsafe environment." Doc. 91-1 at 20:17-25.

Notably, on the various occasions in the record when the School Board chair interrupted public comments, it was generally not to quiet an unruly audience and then allow the speaker to continue his or her remarks, as one would have expected. Instead, the School Board chair interrupted public comments to limit and silence *the speaker*. *See, e.g.,* Doc. 91-1 at 25:15-18, 27:18-20. The Plaintiffs testified below that this behavior had a chilling effect on their future comments before the Board. *See, e.g.,* Doc. 3-1 at 4; Doc. 91-4 at 4.

This is not governmental conduct allowed by the First Amendment, and the District Court's grant of summary judgment to the School Board was therefore erroneous.

## B. The School Board Repeatedly Used the Pretext of "Safety" to Engage in an Impermissible Heckler's Veto of the Plaintiffs and Restrict Free Speech at Its Meetings.

Despite the way the School Board in this case has conducted itself, "it is our law and our tradition that more speech, not less, is the

governing rule." *Citizens United v. FEC*, 558 U.S. 310, 361 (2009); *see* U.S. Const. amend. I (prohibiting the government from making laws "abridging the freedom of speech"). The constitutional protection of free speech is not merely intended to encourage self-expression. "[F]ree speech is 'essential to our democratic form of government.' Without genuine freedom of speech, the search for truth is stymied, and the ideas and debates necessary for the continuous improvement of our republic cannot flourish." *Meriwether v. Hartop*, 992 F.3d 492, 503 (6th Cir. 2021) (Thapar, J.) (quoting and citing *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018)).

Our Founders were confident in their belief "that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth[.]" *Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring). The Constitution accordingly seeks to "maintain a free marketplace of ideas, a marketplace that provides access to 'social, political, esthetic, moral, and other ideas and experiences.'" *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 583 (2011) (quoting *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390, (1969) and citing *Abrams v. United States*, 250 U.S. 616, 630

(1919) (Holmes, J., dissenting)).  "Even a false statement may be deemed to make a valuable contribution to public debate, since it brings about 'the clearer perception and livelier impression of truth, produced by its collision with error.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 n.19 (1964) (quoting John Stuart Mill, *On Liberty* (Oxford: Blackwell 1947), at 15, and citing John Milton, *Areopagitica*, in Prose Works (Yale 1959), Vol. II, at 561).

The School Board's talismanic invocation of "safety" to curtail public comments is but a reincarnation of a familiar enemy of free speech—the heckler's veto.  "A heckler's veto generally occurs when the government suppresses speech because of poor audience reaction, especially a reaction so negative that the threat of violence becomes imminent."  *McMahon v. City of Panama City Beach*, 180 F. Supp. 3d 1076, 1109-10. (N.D. Fla. 2016) (citations omitted).  As Justice Alito recently explained with his concurring opinion in *Mahanoy Area School District v. B.L.*, "[I]t is a 'bedrock principle' that speech may not be suppressed simply because it expresses ideas that are 'offensive or disagreeable.'"  141 S. Ct. 2038, 2055 (2021) (Alito, J., concurring) (citations omitted).  This applies even to the speech of public school

students, whose otherwise protected speech might prompt their classmates to cause a disruption; the student speaker continues to be deserving of school protection, not punishment. *See id.* at 2056 ("[T]he student enjoys the same First Amendment protection against government regulation as all other members of the public."). Other courts have similarly recognized that Supreme Court precedent makes it indisputable that "the First Amendment does not countenance a heckler's veto." *Bible Believers v. Wayne County*, 805 F.3d 228, 248 (6th Cir. 2015) (*en banc*); *see Watson v. Memphis*, 373 U.S. 526, 535 (1963) ("[C]onstitutional rights may not be denied simply because of hostility to their assertion or exercise."); *see also Cox v. Louisiana*, 379 U.S. 536, 551 (1965). "When a peaceful speaker, whose message is constitutionally protected, is confronted by a hostile crowd, the state may not silence the speaker as an expedient alternative to containing or snuffing out the lawless behavior of the rioting individuals." *Bible Believers*, 805 F.3d at 252.

The School Board here failed to recognize that parents are not terrorists and political speech is not weaponry. The Constitution, however, forbids the government from treating politically engaged

parents like a domestic enemy.  While speech that is directed to inciting imminent lawless action and that is likely to produce such a result enjoys no First Amendment protection,[2] the rule of law is not advanced by government censorship of speech that is constitutionally protected.

## C. The First Amendment Protects Controversial Speech, Even in a Limited Public Forum.

The actions of the School Board in this case are not examples of a government body reasonably limiting the topics that may be addressed in a limited public forum.  *See, e.g., Keister v. Bell*, 879 F.3d 1282, 1289 (11th Cir. 2018) ("[A] limited public forum is established when governmental entities open their property but limit its use to 'certain groups or dedicate[] [it] solely to the discussion of certain subjects.'") (quoting *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 679 n.11 (2010)).  Though the government may place restrictions on speech in a limited public forum so long as they are viewpoint neutral and reasonable in light of the purpose of the forum, *see Bloedorn v. Grube*, 631 F.3d 1218, 1235 (11th Cir. 2011), here the

---

[2] *See Bible Believers*, 805 F.3d at 244 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).

School Board's policy fails both of these requirements. Summary judgment exculpating the School Board was thus improper.

First, as Plaintiffs argue in their brief, "[g]iving offense is a viewpoint," *Matal v. Tam*, 582 U.S. 218, 243 (2017) (plurality opinion), and is therefore constitutionally protected. This means that a School Board's public comment "[p]olicy's restrictions on abusive, personally directed, and antagonistic speech . . . violate the First Amendment[.]" *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 895 (6th Cir. 2021); *see Marshall v. Amuso*, 571 F. Supp. 3d 412, 421-23 (E.D. Pa. 2021) (enjoining School Board public comments policy) ("[D]isfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment.") (quoting *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019)) (internal quotation marks omitted)).

On two other occasions, this Court has issued opinions that underscore the impermissibility of the School Board's policy due to its arbitrary nature. In *Crowder v. Housing Authority of Atlanta*, this Court wrote that, while some conditions are permissible for a limited public forum, "a restriction which vests unlimited discretion in a government actor . . . opens the way to arbitrary suppression of

particular points of view." 990 F.2d 586, 591 (11th Cir. 1993). Further, this Court in *Cambridge Christian School, Inc. v. Florida High School Athletic Association*, explained that "even in a nonpublic forum the government must avoid the haphazard and arbitrary enforcement of speech restrictions in order for them to be upheld as reasonable." 942 F.3d 1215, 1243 (11th Cir. 2019). Describing the Supreme Court's 2018 decision in *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, this Court said, "the law did not facially discriminate on the basis of viewpoint . . . [and] it was reasonable for the State to determine that 'some forms of advocacy should be excluded from [a] polling place' . . . [b]ut the Court determined that the law still failed the reasonableness test because the ban on 'political' apparel was too indeterminate and haphazardly applied." *Id.* For the plaintiffs in *Cambridge Christian School* this principle compelled reversal of the lower court's dismissal of their First Amendment claims since the government had been inconsistent in its application of its ostensible rule. *Id.* at 1245-46. A similar result is dictated in this case.

Here, there is ample evidence in the record showing arbitrariness and inconsistency in the application of the School Board's policy,

resulting in censorship of Plaintiffs' speech. These facts alone should suffice to defeat the School Board's contention that it has only been engaged in validly enforcing the objective parameters for a limited public forum. But, the School Board has even more problems in the way it has conducted itself.

The School Board's restrictions in this case can hardly be deemed reasonable in light of the purpose of the public comments period, which is to discuss School Board business. Indeed, it appears that the Plaintiffs have come to meetings to discuss controversial topics *because* the Board and the school system it runs have taken controversial actions. Under the reasoning advanced by the School Board, the more its actions are worthy of public attention, the more it is empowered to censor public discussion of the Board at the very time and place when such public discussion would be most impactful. This cynical sleight of hand is anathema to the First Amendment. *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) ("[A]dvocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression"); *Roth v. United States*, 354 U.S. 476, 484 (1957) ("The protection given speech . . . was fashioned to assure unfettered

interchange of ideas for the bringing about of political and social changes desired by the people[.]").

"The right to speak freely and to promote diversity of ideas and programs . . . may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *see Snyder v. Phelps*, 562 U.S. 443, 460-61 (2011) ("As a Nation we have chosen . . . to protect even hurtful speech on public issues to ensure that we do not stifle public debate."); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989) ("[A] principal function of free speech under our system of government is to invite dispute.") (internal quotation marks and citations omitted); *see also Gerber v. Herskovitz*, 14 F.4th 500, 519-20 (6th Cir. 2021) ("[F]reedom of speech is protected against censorship or punishment, unless likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.") (internal quotation marks and citations omitted). The School Board's policy then is not reasonable in light of the purpose for the forum since the reason for public comments at the Board's meeting is to discuss business undertaken by the Board,

particularly business that might merit action by Board members or citizens.  Speaking on the Board's work is not a threat to safety.  It is responsible self-governance as it has been known in this nation since before its founding.  *See, e.g., Citizens United*, 558 U.S. at 339 ("The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it.").

Because the record shows the School Board failed to administer a valid limited public forum and instead censored speech it did not like, using a heckler's veto where necessary, its actions violated the First Amendment, and summary judgment in favor of the Board should be vacated and reversed.

## II. THE SCHOOL BOARD'S ACTIONS IMPEDED THE PUBLIC'S RIGHT TO RECEIVE INFORMATION VITAL TO A SYSTEM OF SELF-GOVERNANCE IN VIOLATION OF THE FIRST AMENDMENT.

Just as it protects the right to *speak*, the First Amendment also protects the right to *receive* information.  Receiving information about one's government is necessary to sustain a healthy civic society.  *See, e.g., Connick v. Myers*, 461 U.S. 138, 156 (1983) (Brennan, J., dissenting) ("It is hornbook law . . . that speech about 'the manner in

which government is operated or should be operated' is an essential part of the communications necessary for self-governance the protection of which was a central purpose of the First Amendment.") (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).  The Constitution therefore prevents the government from interfering with "the right to receive information and ideas."  *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *see, e.g., Martin v. Struthers*, 319 U.S. 141, 143 (1943).  "The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them.  It would be a barren marketplace of ideas that had only sellers and no buyer." *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring) (citations omitted).  And, "[a] fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more."  *Packingham v. North Carolina*, 127 S. Ct. 1730, 1735 (2017); *see Martin v. U.S. EPA*, 271 F. Supp. 2d 38, 47 (D.D.C. 2002) (quoting *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976) ("[W]here a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both.")).

The Plaintiffs in this case sought to engage in public speech (including criticism) regarding the operation of their public school system at the meetings of the School Board, which was responsible for its governance. "The right of free public discussion of the stewardship of public officials . . . [is] a fundamental principle of the American form of government." *New York Times*, 376 U.S. at 275; *see Schacht v. United States*, 398 U.S. 58, 63 (1970) (commenting that all persons "in our country, enjoy[] a constitutional right to freedom of speech, including the right openly to criticize the Government"); *see also Ariz. Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 754 (2011) ("'[T]here is practically universal agreement that a major purpose of the First Amendment 'was to protect the free discussion of governmental affairs[.]'") (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)).

Information the Plaintiffs desired to convey publicly—both to exercise their right to speak and to petition for redress of grievances—but that drew censorship from the School Board included comments on the following topics:

- the School Board's LGBT policies;

- the School Board's COVID masking policies;

- education-related policies of the Democratic Party and how they were affecting the school system;

- controversial books contained in the school system's libraries;

- the School Board's alleged improper handling of a situation involving an ex-teacher convicted of indecent exposure; and

- the identities of individual School Board members about whom speakers wished to register some form of comment.

*See* Doc. 3-4 at 1, ¶¶ 4-5; *id.* at 3-5; Doc. 3-4 at 3-5; Doc. 20 at 30-31, 43; Doc. 91-10 at 1, ¶¶ 4-5. One would be hard-pressed to argue that these topics were out of bounds for public mentioning and that the public could not have derived at least some benefit from their discussion.

Because of the School Board's censorship, however, not only was the right of the Plaintiffs to speak on these matters interfered with, but the right of untold others to receive information from the speakers was also harmed. This is an unfortunate consequence of censorship that is often overlooked. Moreover, such censorship facilitates a tendency of government to use secrecy to increase its own power at the expense of an informed and engaged citizenry. "Information is power, and it is no

mystery to government officials that power can be increased through controls on the flow of information." Daniel Patrick Moynihan *et al.*, *Report of the Commission on Protecting and Reducing Government Secrecy*, S. Doc. No. 105-2, app. A at Ch. I ("Secrecy: A Brief Account of the American Experience") (1997), *available at* https://sgp.fas.org/library/moynihan/chap1.html (last visited Apr. 16, 2023).

Undoubtedly, the public has an interest in knowing how its officials are discharging their duties. *See Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property[.]"). "[T]hose who administer justice should always act under the sense of public responsibility, and . . . every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."' *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1069 (3d Cir. 1984) (quoting *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884)). The right of parents to know what is transpiring within the schools into whose care they entrust their children is necessarily all the greater. *Cf. Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he care, custody, and

control of their children . . . [is] perhaps the oldest of the fundamental liberty interests recognized by this Court."); *cf. also* Fla. Stat. § 286.0114(2) ("Members of the public shall be given a reasonable opportunity to be heard on a proposition before a board or commission."). Nevertheless, the School Board, particularly with its policy on censoring the names of Board Members, seeks to operate in the shadows away from the light of public scrutiny demanded by the First Amendment.

Arbitrary and unprincipled censorship of disfavored speakers by a local governmental board, like that shown by the School Board's record in this case, harms the public's right to receive information and inflicts grievous injury on these First Amendment interests. Relief from this Court, reversing summary judgment for the School Board, is necessary to prevent further such damage.

## CONCLUSION

For the above-stated reasons, the District Court's judgment should be reversed, and the order granting the Defendants' motion to dismiss should be vacated.

Respectfully submitted,

<u>/s/B. Tyler Brooks</u>
Thomas Brejcha[†]
B. Tyler Brooks
THOMAS MORE SOCIETY
309 W. Washington St.
Suite 1250
Chicago, IL 60606
Telephone: (336) 707-8855
Fax: (336) 900-6535
tbrejcha@thomasmoresociety.org
tbrooks@thomasmoresociety.org

[†] *pro hac vice* application forthcoming.

*Counsel for Amicus Curiae*
*Thomas More Society*

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT, TYPEFACE REQUIREMENTS, TYPE-STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,740 words, excluding the parts of this brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook font.

DATED: April 17, 2023

/s/B. Tyler Brooks
B. Tyler Brooks
*Counsel for Amicus Curiae*
*Thomas More Society*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: April 17, 2023
/s/B. Tyler Brooks
B. Tyler Brooks
*Counsel for Amicus Curiae*
*Thomas More Society*