No. 23-10656-B

# In the United States Court of Appeals for the Eleventh Circuit

MOMS FOR LIBERTY – BREVARD COUNTY, FL., et al.,

*Plaintiffs-Appellants,*

v.

BREVARD PUBLIC SCHOOLS, et al.,

*Defendants-Appellees.*

Appeal from a Judgment of the United States District Court
for The Middle District of Florida, the Hon. Roy B. Dalton, Jr.,
(Dist. Ct. No. 6:21-cv-018949-RBD-GJK)

PROPOSED AMENDED *AMICUS CURIAE* BRIEF OF
THE AMERICAN CENTER FOR LAW AND JUSTICE,
SUPPORTING APPELLANTS AND REVERSAL

JAY ALAN SEKULOW
  *Counsel of Record*
STUART J. ROTH
JORDAN A. SEKULOW
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309
sekulow@aclj.org

April 18, 2023

*Counsel for Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS**

The ACLJ is a non-profit legal corporation dedicated to the defense of constitutional liberties secured by law. The ACLJ has no parent corporation and issues no stock.

Amicus Curiae American Center for Law and Justice certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1:

1. American Center for Law and Justice – Amicus Curiae in Support of Plaintiffs-Appellants

2. Astor, Martha – Counsel for Appellants

3. Baker, Hon. David A. – United States Magistrate Judge

4. Brevard County Public Schools Office of Legal Services – Counsel for Appellees

5. Brevard Public Schools – Appellee

6. Bridges, Gennifer – Counsel for Appellees

7. Burr & Forman LLP – Law firm representing Appellees

8. Campbell, Katye – Appellee

9. Cholewa, Joseph – Appellant

10. Dalton, Jr., Hon. Roy B. – United States District Judge

11. Delaney, Katie – Appellant

12. Gibbs, Paul – General Counsel for Brevard County School Board

13. Goldstein Law Partners, LLC – Law firm representing Appellants

14. Gura, Alan – Counsel for Appellants

15. Haggard-Belford, Misty – Appellee

16. Hall, Ashley – Appellant

17. Institute for Free Speech – Organization representing Appellants

18. Jenkins, Jennifer – Appellee

19. Kelly, Hon. Gregory J. – United States Magistrate Judge

20. Kneessy, Amy – Appellant

21. Londono, Valerie – Assistant General Counsel for Brevard County

School Board

22. Marks, Howard – Counsel for Appellee

23. McDougall, Cheryl – Appellee

24. Moms for Liberty – Brevard County, FL – Appellant

25. Moms for Liberty, Inc. – National affiliate of Appellant

26. Morrison, Ryan – Counsel for Appellants

27. Nolan, Brett R. – Counsel for Appellants

28. Osborne, David – Counsel for Appellants

29. Roth, Stuart J. – Counsel for Amicus Curiae American Center for Law and Justice

30. Sekulow, Jay Alan – Counsel for Amicus Curiae American Center for Law and Justice

31. Sekulow, Jordan A – Counsel for Amicus Curiae American Center for Law and Justice

32. Susin, Matt – Appellee

33. Thakrar, Sheena – Counsel for Appellees

34. Trent, Gene – Appellee

35. Wright, Megan – Appellee

/s/ Jay Alan Sekulow
Jay Alan Sekulow
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS *Page*

CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS ....................................................................C – 1

TABLE OF CONTENTS...............................................................................i

TABLE OF AUTHORITIES .................................................................... ii

INTEREST OF *AMICUS* ...........................................................................1

INTRODUCTION .......................................................................................1

ARGUMENT ...............................................................................................3

I.      The Court Should Harmonize its Precedent with the Principle that School Board Meetings with Public Comment Periods are Limited Public Forums in which Content-Based Speech Restrictions Unrelated to the Scope and Purpose of the Forum Are Subject to Strict Scrutiny ..........5

II.     The School Board's Policy Violates First Amendment Protection of "Personally Directed" Speech……………………………………...…9

CONCLUSION ...........................................................................................15

CERTIFICATE OF COMPLIANCE.......................................................16

CERTIFICATE OF SERVICE .................................................................17

**TABLE OF AUTHORITIES** *Page(s)*

**Cases**

*Acosta v. City of Costa Mesa*,
    718 F.3d 800 (9th Cir. 2013) ................................................................ 13

*Bach v. Sch. Bd. of Va. Beach*,
    139 F. Supp. 2d 738 (E.D. Va. 2001) ................................................. 12

*Barrett v. Walker Cty. Sch. Dist.*,
    872 F.3d 1209 (11th Cir. 2017) ............................................................ 5

*Bridges v. California*,
    314 U.S. 252 (1941) ............................................................................. 3

*Carey v. Brown*,
    447 U.S. 455 (1980) ......................................................................... 3, 8

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985) ........................................................................... 13

*Fort Lauderdale Food not Bombs v. City of Fort Lauderdale*,
    11 F.4th 1266 (11th Cir. 2021) ......................................................... 13

*Goulart v. Meadows*,
    345 F.3d 239 (4th Cir. 2003) ............................................................... 7

*Ison v. Madison Local Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021) .................................................................. 7

*Jones v. Heyman*,
    888 F.2d 1328 (11th Cir. 1989) ........................................................... 5

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022) ......................................................................... 1

*Leventhal v. Vista United Sch. Dist.*,
   973 F. Supp. 951 (S.D. Cal. 1997)............................................ 10, 11, 12

*Madison Joint Sch. Dist. v. Wis. Emp. Rels. Comm'n*,
   429 U.S. 167 (1976) ........................................................................ 6, 11

*McCullen v. Coakley*,
   573 U.S. 464 (2014).......................................................................... 6, 11

*Moms for Liberty v. Brevard Pub. Schs.*,
   582 F. Supp. 3d 1214 (M.D. Fla. 2022)........................................ 1, 2, 3, 10, 11

*NAACP v. Button*,
   371 U.S. 415 (1963) ............................................................................... 3

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ............................................................................... 9

*Otto v. City of Boca Raton*,
   981 F.3d 854 (11th Cir. 2020) ...................................................... 11, 12

*Palm Beach v. Gradison*,
   296 So. 2d 473 (Fla. 1974) ............................................................ 4, 14

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968) ............................................................................. 10

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009)............................................................................... 1

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992)............................................................................... 3

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ............................................................................. 11

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995)............................................................................... 7

iii

*Rowe v. City of Cocoa*,
   358 F.3d 800 (11th Cir. 2004) ...................................................... 5, 6

*Terminiello v. Chicago*,
   337 U.S. 1 (1949).......................................................................... 9

*Turner Broadcasting Sys., Inc. v. FCC*,
   512 U.S. 622 (1994)...................................................................... 7

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ................................................................... 2

*Whitney v. California*,
   274 U.S. 357 (1927)...................................................................... 3, 4

*Widmar v. Vincent*,
   454 U.S. 263 (1981)...................................................................... 12

*Zorc v. City of Vero Beach*,
   722 So. 2d 891 (Fla. Dist. Ct. App. 1998) .................................... 4

**Constitutions and Statutes**

Fla. Const. art. I, § 24............................................................................ 4

Fla. Const. art. IX, § 4...........................................................................10

Fla. Stat. Ann. § 286.011 ........................................................................4

Fla. Stat. Ann. § 286.0114 .....................................................................12

**Other Authorities**

Appellants' Brief.................................................................................... 1

Caroline Vakil, *National Archives Apologizes for Asking People to Cover-Up Anti-Abortion Messages*, FOX59 (Feb. 10, 2023, 11:58 AM),

https://fox59.com/news/national-world/national-archives-apologizes-for-asking-people-to-cover-up-anti-abortion-messages/ ........................................................... 10

Defendants' Answer to Amended Complaint ......................................................... 12

Staff of H. Comm. on the Judiciary & Select Subcommittee on the Weaponization of the Fed. Gov't, 118th Cong., *A "Manufactured" Issue And "Misapplied" Priorities: Subpoenaed Documents Show No Legitimate Basis For The Attorney General's Anti-Parent Memo* (Mar. 21, 2023) ............................................. 9, 10

Terri Day & Erin Bradford, *Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency*, 10 First Amend. L. Rev. 57 (2011) ............................................................................................................... 8

## INTEREST OF AMICUS[1]

*Amicus*, the American Center for Law and Justice ("ACLJ"), is an organization dedicated to the defense of constitutional liberties secured by law. ACLJ attorneys regularly appear before the U.S. Supreme Court, federal courts of appeals (including this Court), and other courts as counsel either for a party, *e.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), or for amicus, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022), addressing a variety of constitutional law issues, including the Free Speech Clause of the First Amendment.

## INTRODUCTION

The Brevard County Public School Board's Public Participation Policy ("Policy"), in effect until a month ago, required speakers to direct their comments to the presiding officer and barred speakers from addressing or questioning Board members individually. *Moms for Liberty v. Brevard Pub. Schs.*, 582 F. Supp. 3d 1214, 1217-18 (M.D. Fla. 2022). The policy was repeatedly enforced against plaintiffs but inconsistently enforced against other speakers. *See* Appellants' Br. 10-15. On March 7, 2023, shortly after this appeal was filed, the Board changed its

---

[1]Appellants' counsel consented to the filing of this amicus brief; Appellees' counsel declined consent. No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

1

policy. The revised policy permits speakers to "address their comments to the Board as a whole, the presiding officer, or to an individual Board member" but continues to proscribe the mention of "staff members or other individuals."[2] Hence, the board's rule, even as modified, outlaws a statement complimenting a particular math teacher on implementing a given curriculum, or identifying a PE teacher whose program is particularly worth imitation – even when such statements are completely germane. The Policy provides further that the Chair may, among other things, "interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed [except as permitted by the March 7 revision], abusive, obscene, or irrelevant" and "request any individual to leave the meeting when that person does not observe reasonable decorum." 582 F. Supp. 3d at 1217-18.

Amicus respectfully submits this brief to make two points. First, this Court's decisions on permissible restrictions in limited public forums point in different directions, and this case presents an opportunity for the Court to harmonize the law in this Circuit. Content-based limitations are allowed as to what topics may be

---

[2] The revised policy does not affect Appellants' claim for nominal damages, nor does it affect their claim for injunctive relief against the policy's continued ban against mention of other individuals. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (holding that nominal damages claim prevented plaintiff's case from going moot, even though the defendant's mid-litigation policy change eliminated the possibility of prospective relief).

2

discussed or who may speak, but content-based criteria dictating how qualified speakers on a relevant topic express themselves are subject to strict scrutiny. It is not true, as the district court held, that all content restrictions are permissible in a limited public forum, provided they are reasonable and viewpoint neutral. 582 F. Supp. 3d at 1219. To the extent this Court's precedents may be read to the contrary, this Court should clarify them to bring them into greater alignment with the Supreme Court's public forum decisions. Second, the Policy's prohibition against personally directed speech constitutes impermissible content discrimination and should be subject to strict scrutiny.

## ARGUMENT

First Amendment rights are "supremely precious in our society," *NAACP* v. *Button*, 371 U.S. 415, 433 (1963), and political speech occupies the "highest rung on the hierarchy of First Amendment values." *Carey v. Brown*, 447 U.S. 455, 467 (1980); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 422 (1992) (Stevens, J., concurring); *see also Bridges v. California*, 314 U.S. 252, 270 (1941) ("[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on *all* public institutions.") (emphasis added). The First Amendment does not protect only "abstract discussion" but also "vigorous advocacy." *Button*, 371 U.S. at 429.

As Justice Brandeis so eloquently explained,

Those who won our independence believed that . . . freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; that without free speech . . . discussion would be futile; . . . that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; . . . that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies . . . . Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law—the argument of force in its worst form.

*Whitney v. California*, 274 U.S. 357, 375-76 (1927) (Brandeis, J., concurring).

Florida's commitment to these principles is illustrated in its Sunshine Law, requiring that most meetings of governmental bodies be open to the public. Codified in 1967,[3] and constitutionalized in 1992,[4] Florida's Sunshine Law reflects the State's commitment to free and open public participation in government affairs, including school board matters. A foundational premise of the Sunshine Law is that

[n]o governmental board is infallible and it is foolish to assume that those who are elected or appointed to office have any superior knowledge concerning any governmental problem. Every person charged with the administration of any governmental activity must rely upon suggestions and ideas advanced by other knowledgeable and interested persons. As more people participate in governmental activities, the decision-making process will be improved.

---

[3] Fla. Stat. Ann. § 286.011(1) (LexisNexis 2022).
[4] Fla. Const. art. I, § 24(b); *see also Zorc v. City of Vero Beach*, 722 So. 2d 891, 896 (Fla. Dist. Ct. App. 1998) (noting that statutory and constitutional provisions of the "Sunshine Law" are "virtually identical").

*Palm Beach v. Gradison*, 296 So. 2d 473, 476-77 (Fla. 1974) (asserting that the Sunshine Law must be construed "to frustrate all evasive devices").

The foregoing principles foreclose content-based restrictions that are unrelated to the scope and purpose of a limited public forum.

I.      **The Court Should Harmonize its Precedent with the Principle that School Board Meetings with Public Comment Periods are Limited Public Forums in which Content-Based Speech Restrictions Unrelated to the Scope and Purpose of the Forum Are Subject to Strict Scrutiny.**

This Court's cases are somewhat inconsistent about 1) what type of forum is created when local governmental bodies open meetings to public comment, and 2) whether content-based restrictions on how speakers may speak are impermissible. In *Jones v. Heyman*, 888 F.2d 1328, 1331, 1333 (11th Cir. 1989), for example, this Court held that a city commission meeting open for public comment was a designated public forum. Yet, in *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1225 (11th Cir. 2017), the Court held that a school board meeting with a public comment period was a limited public forum. Inconsistent designation of governmental meetings open for public comment has resulted in confusion about whether content neutrality is required for any policies governing speech that otherwise satisfies the forum's scope and purpose. *Heyman* said that content-based restrictions are impermissible. 888 F.2d at 1332. *Barrett* said that content-based restrictions are "permitted in a limited public

5

forum if [they are] viewpoint neutral and reasonable in light of the forum's purpose." 872 F.3d at 1225.

*Rowe v. City of Cocoa* also contributed to the confusion by categorizing citizen comment sessions as "limited public forums," but applying the standard governing a "designated public forum." 358 F.3d 800, 802-03 (11th Cir. 2004) (stating that in a limited public forum, government speech restrictions that are content neutral and regulate the time, place, and manner of speech must be narrowly tailored to serve a significant government interest).

Muddling forum categories and permissible restrictions blurs the distinction between 1) nonpublic forums that have not been designated for any speech by members of the public and 2) limited public forums that serve a crucial purpose in our representative democracy. Also blurred is the distinction between content-based rules that set the topic and speaker-based contours of the forum, and those that govern what an individual speaker entitled to speak at the forum may say on a germane topic within the objective scope of the forum's designation. Upholding content-based restrictions that are unrelated to the scope and purpose of the limited forum infringes core First Amendment values just as effectively as viewpoint-based restrictions do.

Content discrimination in limited public forums is permissible only as long as the content is tied to the limitations that frame the scope of the forum. *McCullen v.*

*Coakley*, 573 U.S. 464, 477 (2014) (stating that in a limited public forum, the government may "regulate features of speech unrelated to its content" through "time, place, or manner"); *Madison Joint Sch. Dist. v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 176 (1976) (holding that a state law forbidding public school teachers from participating in public comment sessions before school board meetings was unconstitutional content discrimination).

No Supreme Court case has ever held that content-based restrictions are allowed as to comments by qualified speakers on topics that are within the objective scope of a limited forum. When, as in this case, content-based criteria determine how a qualified speaker on a relevant topic may express his views, such criteria are presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 641-643 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."); *see also Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (stating that speech restrictions in a limited public forum must be unrelated to content); *Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003) (explaining that there are "two levels" of analysis—the "external" and "internal"

standards—and holding that content-based criteria are permissible only to establish the external scope of the limited forum).

Both content and viewpoint neutrality are critical in limited public forums because some restrictions may be viewpoint-neutral but operate to suppress speech that is fully within the purpose and scope of the limited forum. For example, a rule that speakers at school board meetings cannot refer to past school board decisions may be viewpoint-neutral but would suppress a category of speech which is otherwise within the scope of the forum. Similarly, the Brevard Policy's prohibition against personally directed speech stifles an entire category of speech that is within the scope of the forum. Both the hypothetical restriction and the Brevard Policy restriction exclude political speech that occupies the highest rung in the First Amendment hierarchy. *Carey*, 447 U.S. at 467; *see also* Terri Day & Erin Bradford, *Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency*, 10 First Amend. L. Rev. 57, 94, 98 (2011) (arguing that bans on personally directed speech are "content-based speech restrictions" which are "doomed to fail a constitutional challenge").

This Court should reverse the district court's holding and clarify that in a limited public forum, reasonable content-based limitations are allowed as to what

topics may be discussed or who may speak, but content-based criteria dictating how a qualified speaker on a relevant topic expresses an idea are subject to strict scrutiny.

## II. The School Board's Policy Violates First Amendment Protection of "Personally Directed" Speech.

The School Board Policy's ban on personally directed speech is a content-based restriction unrelated to the scope of the forum and therefore presumptively unconstitutional. Protected political speech includes "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The right to speak freely to and about public officials is "one of the chief distinctions that sets us apart from totalitarian regimes," *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949), and is "the central meaning of the First Amendment." *Sullivan*, 376 U.S. at 273. Safeguarding that freedom is even more imperative in light of the steady stream of reports that those with disfavored views are subject to governmental reprisals or investigation.[5]

---

[5] Two recent examples from this year alone suffice.
- In March 2023, a House Subcommittee interim report revealed that, over the course of the past two years, the FBI has been investigating parents who have expressed their concerns at school board meetings and has created a tip-line website to facilitate these investigations. Staff of H. Comm. on the Judiciary & Select Subcommittee on the Weaponization of the Fed. Gov't, 118th Cong., *A "Manufactured" Issue And "Misapplied" Priorities: Subpoenaed Documents Show No Legitimate Basis For The Attorney General's Anti-Parent Memo* 5-7 (Mar. 21, 2023).

School board members are public officials because they are elected by the voters in that school district. Fla. Const. art. IX, § 4(a). Public school board officials are not immune from public criticism. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 564-65 (1968) (holding First Amendment protected teacher's letter to a local newspaper criticizing the actions of the local school board and district superintendent). Little government activity affects citizens as profoundly as the state's education of their children.

> The public entrusts school boards with the education of its children, and the schools play a critical role in the social, ethical, and civic development of those students. To relegate discussion on the education of a community's children to closed, back-room sessions would deprive the public of the most appropriate forum to debate these issues.

*Leventhal v. Vista United Sch. Dist.*, 973 F. Supp. 951, 960-61 (S.D. Cal. 1997). School boards meetings ought therefore to be models of welcoming public participation.

The district court erred in holding that the School Board's policy prohibiting "personally directed speech" is constitutional. *Moms for Liberty*, 582 F. Supp. 3d at

_____

- In January 2023, security guards at the National Archives and the Smithsonian Air and Space Museum forced groups of teenage students and their parents to leave for wearing pro-life hats. Caroline Vakil, *National Archives Apologizes for Asking People to Cover-Up Anti-Abortion Messages*, FOX59 (Feb. 10, 2023, 11:58 AM), https://fox59.com/news/national-world/national-archives-apologizes-for-asking-people-to-cover-up-anti-abortion-messages/.

1219. To the contrary, a rule prohibiting speech that mentions an individual person is a content-based restriction. Speech restrictions are content-based if they apply "to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). One reliable way to tell if a speech restriction is content-based is to determine whether those enforcing the restriction must "examine the content of the message that is conveyed" to know whether the restriction has been violated. *McCullen*, 573 U.S. at 479; *Otto v. City of Boca Raton,* 981 F.3d 854, 862 (11th Cir. 2020). Here, the answer is obviously yes.

The ban on personally directed speech is a "selective exclusion" based on content alone. *See Madison Joint Sch. Dist.*, 429 U.S. at 178-79 (Brennan, J., joined by Marshall, J., concurring) (stating that when a governmental body opens a forum "dedicated to the expression of views by the general public," it may not make "selective exclusions" based on "content alone"). The exclusion prevents comment on the actions of the School Board members or employees, even those actions that are directly pertinent to the topic at hand in the meeting, and thus infringes on the right of concerned citizens to speak freely.

> Debate over public issues, including the qualifications and performance of public officials (such as a school superintendent), lies at the heart of the First Amendment. Central to these principles is the ability to question and challenge the fitness of the administrative leader of a school district, especially in a forum created specifically to foster discussion about a community's school system.

*Leventhal*, 973 F. Supp. at 958 (cleaned up); *see also Bach v. Sch. Bd. of Va. Beach*, 139 F. Supp. 2d 738, 741, 743 (E.D. Va. 2001) (holding that School Board's speech policy banning "attacks or accusations regarding the honesty, character, integrity or other like personal attributes of any identified individual or group" violates the First Amendment because it "deters individuals from speaking out on an issue of public importance").

The Policy's ban on "personally directed" speech is therefore subject to strict scrutiny. *Widmar v. Vincent*, 454 U.S. 263, 270 (1981) (content-based restrictions in forum opened only to university students subject to strict scrutiny); *Otto,* 981 F.3d at 859 (content-based regulations are subject to strict scrutiny). The Policy's ban fails strict scrutiny because it is not "necessary to serve a compelling state interest" or "narrowly drawn to achieve that end." The only interests the Board cited below were to "maintain[] orderly conduct or proper decorum." Fla. Stat. Ann. § 286.0114(2) (LexisNexis, LEXIS through 2022 reg. & extra sess.); *see* Defs.' Answer to Am. Compl. 25 (referring to preventing the "disruption" of school board meetings). It is possible to maintain order and decorum while still allowing a speaker to directly comment—whether positively or negatively—on the actions of specific individuals. Hence, the restriction on "personally directed" speech, as interpreted in practice by the Board, does not preserve the stated purpose of the forum. While the School Board

has a legitimate interest in conducting its meetings without actual disruption, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 811 (1985), its restriction on personally directed speech is an extraordinarily overbroad means of achieving that interest.

The School Board may prevent actual disruption and preserve order by requiring comments to comply with content-neutral rules. Such rules may include a uniformly enforced and reasonable limit on individual speakers, the need for recognition by the Chair before comment begins, and an overall time limit on the Public Comment session. The Board can also require that comments be addressed to matters on the agenda or otherwise set reasonable topic or speaker-based boundaries. But once a speaker is recognized, confines his or her comments to a topic within the scope of the forum, and keeps within a consistently enforced time limit, those comments do not "disrupt" the meeting. *See Fort Lauderdale Food not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1294 (11th Cir. 2021) (The government "may not regulate speech because it . . . might elicit a violent reaction or difficult-to-manage counterprotests"); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 813-15 (9th Cir. 2013) (per curiam) ("insolent" language restriction not justified by an interest in preventing disruption).

The Policy's ban against personally directed speech is a content-based restriction in a limited forum with the core purpose to welcome "ideas advanced by other knowledgeable and interested persons." *Palm Beach v. Gradison*, 296 So. 2d 473, 476-77 (Fla. 1974). Selectively excluding germane speech just because it refers to specific people strikes at the heart of the First Amendment. The district court's contrary judgment should be reversed.

## CONCLUSION

For the foregoing reasons, Amicus respectfully asks this Court to reverse the

district court's judgment.

Respectfully Submitted,

/s/ Jay Alan Sekulow

JAY ALAN SEKULOW
   *Counsel of Record*
STUART J. ROTH
JORDAN A. SEKULOW
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309
jsekulow@aclj.org

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT, TYPEFACE
REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(b) because it contains 3,523 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft word for office 365 in 14-point Times New Roman font.

**Signature** /s Jay Alan Sekulow          **Date** April 18, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2023, I electronically filed a copy of the foregoing *Amicus Curiae* Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 18, 2023

/s/ Jay Alan Sekulow
Jay Alan Sekulow
*Counsel for Amicus Curiae*